IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIANNA LEMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:20-CV-03233-DGK |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Dianna Lemons' application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of Raynaud's syndrome, familiar tremor, migraines, and bilateral peroneal neuropathy of the lower extremity. The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform jobs which exist in significant numbers in the national economy.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications for supplemental security income and disability insurance benefits on March 15, 2018, alleging a disability-onset date of January 3, 2018. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on July 25, 2019, and on August 16, 2019, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on June 4, 2020, leaving the ALJ's decision as the Commissioner's final decision. Since Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the Court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The Court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The Court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

2

Case 6:20-cv-03233-DGK   Document 14   Filed 11/30/21   Page 2 of 5

**Discussion**

The Commissioner follows a five-step evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). Plaintiff argues the ALJ erred at step four.

RFC is defined as the most a claimant can still do despite her physical or mental limitations. *See* 20 C.F.R. § 416.945(a)(1). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016); *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

Plaintiff argues that the ALJ failed to comply with the requirements of SSR 16-3p because she did not provide sufficient reasons for discounting Plaintiff's subjective reports about the intensity, persistence, and limiting effects of her bilateral peroneal neuropathy of the lower extremity. Pl. Br. at 5–13, ECF No. 9.

SSR 16-3p states that an ALJ's RFC determination "must contain specific reasons for the weight given to the individual's [description of her physical impairments], be consistent with and

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing she is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's [description of her physical impairments]." SSR 16-3P, 2016 WL 1119029 at *9 (Mar. 16, 2016). The ALJ summarized Plaintiff's description of all of her physical impairments, and then concluded that the intensity, persistence, and limiting effects of Plaintiff's physical impairments "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 40.

Regarding her bilateral peroneal neuropathy of the lower extremity, Plaintiff alleged that she often falls or is unable to stand because of her foot braces and because she is unable to control her feet, R. at 67–68, that her braces limit her range of motion but it is difficult for her to walk without them, R. at 70, that she must rely on a cane every day to keep her balance, R. at 70–71, and that she must sit to take a shower, R. at 79.

The ALJ recounted these allegations, R. at 40, and then noted that, in 2016, Plaintiff complained of pain during walking due to planter warts—not neuropathy—and that she had a normal gait. R. at 40, 401. The ALJ also recounted that, in March 2018, Dr. Joshua Wolfe, M.D., reported normal extremity and musculoskeletal exams with idiopathic peripheral autonomic neuropathy which required a cane, R. at 41, 352; that on August 31, 2018, Plaintiff complained to Dr. Dixie Fox, D.P.M.[2], of frequent falling, difficulty walking, and burning, tingling, and numbness in her lower extremities, R. at 41, 419; that Dr. Fox prescribed plaintiff bilateral ankle foot orthotics, R. at 41, 416–17; that at a prosthetics appointment on September 13, 2018, Plaintiff arrived unaccompanied and stated that she walked in her community on a daily basis, R. at 42, 405; that Plaintiff was fitted for orthotics in late September 2018 but, by her next appointment with

---

[2] Doctor of Podiatric Medicine.

4

Dr. Fox on October 26, 2018, Plaintiff had stopped wearing her orthotics because they caused blisters, R. at 42, 423–24; that at her October 26 appointment, Plaintiff had no lower extremity pain and ambulated without any assistive devices, *id.*; that Plaintiff's neurologist, Dr. Clara N. Applegate, M.D., reported that a electromyography test showed that Plaintiff's tibial and sural nerves were normal, that Plaintiff had no evidence of diffuse sensorimotor neuropathy, that Plaintiff had no nerve compression in her knees, and that an electroencephalogram was normal, R. at 43, 565, 572; and that in June of 2019, Dr. Applegate documented Plaintiff's peripheral neuropathy as "mild" after noting that Plaintiff had a negative Romberg test and no impairment on a heel-to-shin test, R. at 44, 47, 569.

The ALJ also noted that Plaintiff's activities of daily living are inconsistent with her allegations regarding the intensity, severity, and limiting effects of her bilateral peroneal neuropathy of the lower extremity. The ALJ noted that, in 2019, Plaintiff lived with her boyfriend and was able to vacation in Texas. R. at 45, 430, 464. In addition, Plaintiff testified at the hearing that she drives and currently lives on her own. R. at 45, 59.

These are clearly articulated, specific reasons why the ALJ discounted Plaintiff's allegations, and they are supported by evidence in the record. As such, the ALJ complied with SSR 16-3P.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: November 30, 2021 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT